UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTWAN SEASE, SR., <br>     Plaintiff, <br><br> v. <br><br> PAUL FRENIS, et al., <br>     Defendants. | No. 3:17-cv-770 (SRU) |

## ORDER

This is a case about a claimed excessive use of force against a Connecticut state inmate. The plaintiff, Antwan Sease, Sr. ("Sease"), alleges that Paul Frenis and twelve other Correctional Officers and Lieutenants (collectively, the "Defendants") violated Sease's Eighth Amendment right to be free from cruel and unusual punishments. At this stage, though, the only issue before me regards whether Sease's claims can proceed or whether he failed to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). Because there is a genuine dispute of material fact regarding Sease's failure to exhaust, I **deny** the Defendants' motion for summary judgment, doc. no. 45.

### I.     Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986) (plaintiff must present affirmative evidence to defeat a properly supported motion for summary judgment). When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party").  When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings but must present sufficient probative evidence to establish a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Applegate v. Top Assocs., Inc.*, 425 F.2d 92, 96 (2d Cir. 1970).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992).  If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249–50.

> [T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.  As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48.  To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate.  *Celotex*, 477 U.S. at 323.  In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 322–23; *accord*

*Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden is satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

"Failure to exhaust is an affirmative defense under the PLRA" and so "a defendant bears the burden of proving that an inmate did not exhaust his or her remedies prior to filing the action in court." *Durham v. Hanna*, 2020 WL 4586688, at *3 (D. Conn. Aug. 10, 2020) (cleaned up).

## II.      Background

### A.      Procedural Background

On May 10, 2017, Sease initiated this action and filed his first complaint. *See* Compl., Doc. No. 1. On October 19, 2017, I directed Sease to file an amended complaint that was signed and dated. *See* Order, Doc. No. 7. On November 8, 2017, Sease filed that amended complaint. *See* Am. Compl., Doc. No. 8. On December 22, 2017, I issued an initial review order in which I allowed Sease's Eighth Amendment claims to proceed against the defendants in their individual capacities. *See* Initial Review Order, Doc. No. 9. After obtaining the identity of certain Doe defendants, on March 23, 2018, Sease filed a second amended complaint with my permission. *See* Mot. to Amend, Doc. No. 17; Order, Doc. No. 18; Second Am. Compl., Doc. No. 19. On July 27, 2018, the Defendants answered Sease's second amended complaint. *See* Answer, Doc. No. 22.

The case then lay dormant for a full year. On November 8, 2019, Sease made a motion for appointment of counsel, and I granted that motion. *See* Mot. to Appoint Counsel, Doc. No. 29; Order, Doc. No. 30. On January 31, 2020, the parties submitted a joint proposed scheduling order, which I approved. *See* Proposed Order, Doc. No. 38; Order, Doc. No. 39. Pursuant to that

3

schedule, on February 14, 2020, Sease filed a third amended complaint.  *See* Third Am. Compl., Doc. No. 40.  The scheduling order also called for bifurcating discovery and dispositive motion practice into two phases:  The first phase would regard Sease's potential non-exhaustion of administrative remedies and the second (if necessary) would regard all the remaining issues in the case.  *See* Proposed Order, Doc. No. 38, at 2.  On August 10, 2020, the Defendants filed the instant motion for summary judgment regarding Sease's non-exhaustion of administrative remedies.  *See* Mot. for Summ. J., Doc. No. 45; Defs.' Mem. of Law in Supp. Mot. for Summ. J. ("Defs.' Mem. of Law"), Doc. No. 47.  On August 31, 2020, Sease filed an opposition to the Defendants' motion for summary judgment.  *See* Sease's Opp'n, Doc. No. 48.  On September 18, 2020, the Defendants filed a reply.  *See* Reply, Doc. No. 53.

      B.      <u>Grievance Procedure Background</u>

Administrative Directive 9.6 ("A.D. 9.6") details the Department of Corrections' ("DOC") inmate grievance procedure:  It "provide[s] a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority."  *See* A.D. 9.6(1), Ex. A to Defs.' Mot. for Summ. J., Doc. No. 45-2; *Riles v. Buchanan*, 656 F. App'x 577, 579–80 (2d Cir. 2016); *Davis v. Williams*, 2019 WL 1012008, at *1–2 (D. Conn. Mar. 4, 2019); *Torres v. Mulligan*, 2018 WL 4054882, at *4 (D. Conn. Aug. 24, 2018).  Because Sease's complaint concerns correctional staff members' use of excessive force, Sease was obligated to exhaust his administrative remedies according to A.D. 9.6.  *See Riles*, 656 F. App'x at 579–81 (affirming district court's dismissal based on inmate's failure to exhaust claim of correctional officer's use of excessive force under A.D. 9.6).

Pursuant to A.D. 9.6, there are at least three stages of review for an inmate seeking to obtain an administrative remedy.  The first stage is informal resolution.  The inmate may attempt

to verbally resolve his or her issue with an appropriate staff member or supervisor.  A.D. 9.6(6)(A).  If verbal communications yield no resolution, the inmate must submit a written request for resolution on form CN 9601 ("Inmate Request Form").  *Id.*  A prison official must respond to the Inmate Request Form within 15 business days.  *Id.*

If an inmate is either unsatisfied with the DOC's response to his or her Inmate Request Form or the DOC fails to respond within 15 business days, the next stage is for the inmate to file a formal Level 1 grievance by submitting form CN 9602 ("Inmate Administrative Remedy Form").  *Id.* at 9.6(6)(C).  The Level 1 grievance must be filed no later than 30 calendar days from the date of the occurrence or discovery of the cause of the grievance, and it must also include a copy of the staff response to the Inmate Request Form or explain why the response is not attached.  *Id.*  The Unit Administrator must issue a written response to the Level 1 grievance within 30 business days of receipt.  *Id.* at 9.6(6)(I).

A Level 1 grievance may be rejected, denied, compromised, upheld, or withdrawn.  *Id.* at 9.6(6)(D).  A Level 1 grievance may also be returned to an inmate without disposition for any one of three reasons.  First, the grievance may be returned if the inmate has not first utilized the informal resolution process.  *Id.* at 9.6(6)(E)(1).  Second, it may be returned if the inmate fails to attach the Inmate Request Form and staff response or to adequately explain why the form is not attached.  *Id.* at 9.6(6)(E)(2).  Third, it may be returned if the inmate fails to adhere to the various requirements under Section (5)(E)(1–5) of A.D. 9.6.  *Id.* at 9.6(6)(E)(3).  One requirement from Section (5)(E) is particularly relevant here:  A Level 1 grievance may be returned without disposition when the inmate's request exceeds the space available on the face of the Inmate Administrative Remedy Form and one additional 8.5-by-11-inch page.  *Id.* at 9.6(5)(E)(4).  When a Level 1 grievance is returned without disposition, an inmate will receive a form CN

9606 ("Returned Without Disposition Form").  *Id.* at 9.6(6)(E).  When a Level 1 grievance is returned without disposition, that means the "grievance has not been properly filed and may be re-filed after the inmate has corrected the error."  *Id.*

The third stage is a Level 2 grievance.[1]  An inmate may file a Level 2 grievance within five calendar days after receiving an adverse decision on a Level 1 grievance or, if the DOC failed to respond to the inmate's Level 1 grievance in a timely manner, within 65 days from the date of filing the Level 1 grievance.  *Id.* at 9.6(6)(G), (K), (M).  Inmates cannot file Level 2 appeals regarding Level 1 grievances that are returned without disposition.  *Id.* at 9.6(6)(G).  Level 2 appeals by inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator.  *Id.* at 9.6(6)(K).  The District Administrator is required to respond to an inmate's Level 2 appeal within 30 business days of receipt of the appeal.  *Id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure, or instances in which the District Administrator does not reply to an inmate's Level 2 appeal in a timely manner.  *Id.* at 9.6(6)(L).

C.  Factual Background

The facts in this case are rather unclear because the parties disagree regarding several important dates.  What follows is my best attempt to summarize both the agreed-upon facts and the relevant areas of dispute.

On May 19, 2014, Sease was incarcerated at Garner Correctional Institution ("Garner").  That day, sometime after 9:00 p.m., Sease alleges that he was "brutally beaten" by correctional officers at Garner.  *See* Pl.'s Local Rule 56(a)2 Stmnt. of Facts in Opp'n to Summ. J. ("Pl.'s 56(a)2 Stmnt."), Doc. No. 48-2, at ¶ 1.  As a result, Sease alleges that he suffered head trauma,

---

[1]  A Level 2 grievance is also referred to as an appeal. *See* A.D. 9.6(6)(K).

6

massive head swelling, and edema. In addition, Sease's left eye was swollen shut, he experienced bleeding out of his right ear, and he suffered from back, shoulder, and leg pain, as well as massive pain around his ribs. *See id.* at ¶ 2. (I will refer to this incident as the "May 19 incident.")

On May 20, 2014 (the following day), Sease was transferred from Garner to Northern Correctional Institution ("Northern"). *Id.* at ¶ 4. On May 21, 2014, Sease wrote or dictated[2] a seven-page informal resolution request letter to DOC Commissioner James Dzurenda, the warden at Garner, and the G Block Captain at Garner; that letter asked those DOC officials to investigate information related to the May 19 incident. *See id.* at ¶ 7; Ex. E to Defs.' Mot. for Summ. J., Doc. No. 45-6, at 11–17. Sease also claims that he submitted two Inmate Request Forms on May 21 and May 23. *See* Ex. E to Defs.' Mot. for Summ. J., Doc. No. 45-6, at 4, 11; Ex. F to Defs.' Mot. for Summ. J., Doc. No. 45-7, at 3; Sease's Opp'n, Doc. No. 48, at 8. Sease did not receive responses to his informal written requests.

As time progressed from May to June, Sease at some point submitted formal Level 1 and Level 2 grievances. The parties disagree about the dates on which those grievances were submitted by Sease and returned to Sease.

The Defendants claim that Sease first filed a Level 1 grievance on June 17—even though the grievance was dated June 14, 2014—as evidenced by DOC officials' entering the grievance into Northern's Returned Without Disposition ("RWOD") Log that day (June 17). *See* Defs.'

---

[2] Although inconsequential for purposes of this motion, the parties agree that Sease submitted an informal request letter on May 21, but they disagree regarding who wrote the letter. The Defendants assert that Sease wrote the letter, but Sease states that he dictated the letter to the inmate in the cell next to his, and that inmate wrote the letter for him. *See* Pl.'s 56(a)2 Stmnt., Doc. No. 48-2, at ¶ 7. Relatedly, Sease alleges that upon arriving at Northern, he requested his property and files from Garner, including writing paper. *Id.* at ¶ 5; Aff. of A. Sease in Supp. Pl.'s Opp. to Defs.' Mot. for Summ. J., Doc. No. 48-1, at ¶ 7. However, Sease claims that he did not receive his files or any writing paper for many weeks after being transferred. Pl.'s 56(a)2 Stmnt., Doc. No. 48-2, at ¶ 6; Sease Aff., Doc. No. 48-1, at ¶ 7. The Defendants dispute Sease's account. *See* Aff. of J. DelPeschio in Supp. Defs.' Reply, Doc. No. 53-1.

7

56(a)1 Stmnt., Doc. No. 45-10, at ¶¶ 18–19; 23–24; Aff. of J. Saunders in Supp. Defs.' Mot. for Summ. J. ("Saunders Aff."), Doc. No. 45-1, at ¶¶ 19–20; Ex. E to Defs.' Mot. for Summ. J., Doc. No. 45-6.  The same day (June 17), Sease's Level 1 grievance was "returned without disposition" because it exceeded the acceptable length of a Level 1 grievance.  Defs.' 56(a)1 Stmnt., Doc. No. 45-10, at ¶ 25.  Sease did not re-file a corrected Level 1 grievance that day.  But, the Defendants claim, June 17 was the last day on which Sease could have filed a Level 1 grievance regarding the May 19 incident because June 17 was (in their view)[3] 30 days after May 19.

According to the Defendants, they received a Level 2 appeal from Sease on June 25 (although the appeal was dated June 18), and they returned it to Sease on the same day without disposition because Sease "had not attempted to resolve [his] problem through the inmate request system before filing a grievance."  Defs.' 56(a)1 Stmnt., Doc. No. 45-10, at ¶¶ 26–28; *see also* Saunders Aff., Doc. No. 45-1, at ¶ 26.  The Defendants admit that Sease eventually re-submitted a Level 1 grievance that complied with A.D. 9.6's length requirement.  However, the Defendants claim that they received and logged that second Level 1 grievance on July 2, 2014—even though it was dated June 19.  Defs.' 56(a)1 Stmnt., Doc. No. 45-10, at ¶ 29; *see also* Saunders Aff., Doc. No. 45-1, at ¶ 28; Ex. G to Defs.' Mot. for Summ. J., Doc. No. 54-1.  The DOC returned Sease's corrected Level 1 grievance without disposition the same day (July 2) because "per A.D. 9.6 you

---

[3] The parties disagree regarding whether 30 days after May 19, 2014 was June 17 or June 18, 2014. *Compare* Sease's Opp'n, Doc. No. 48, at 16 n.9 *with* Defs.' Reply, Doc. No. 53, at 4 n.2.  The answer depends on whether the date of the incident (May 19) counts towards the 30 days.  Neither A.D. 9.6 nor any other administrative directive seems to address that computation of time issue.
    Although not dispositive in this case, I agree with courts that have calculated the 30-day period under A.D. 9.6 in a way that excludes the date of the incident.  *See, e.g.*, *Davis*, 2019 WL 1012008, at *2 (Aug. 18 to Sept. 17, 2016); *Durham*, 2020 WL 4586688, at *6 (Jan. 29 to Feb. 28, 2019).  The only authority that the Defendants provide in their support—*Solman v. Corl*, 2018 WL 2337129 (D. Conn. May 23, 2018)—is inapposite because it does not address the question and does not even calculate the end date for any asserted 30-day period.  Although not directly on point, it is also significant that the Federal Rules of Civil Procedure provide that when a "statute . . . does not specify a method of computing time" and the "period is stated in days," one computing the time should "exclude the day of the event that triggers the period."  Fed. R. Civ. P. 6(a)(1)(A).

are past your 30 days." Pl.'s 56(a)2 Stmnt., Doc. No. 48-2, at ¶ 30; Ex. G to Defs.' Mot. for Summ. J., Doc. No. 54-1. On July 15, 2014, the Administrative Remedies Coordinator ("ARC") wrote to Sease and explained that he was "correct in returning your grievance without disposition" because "you are past 30 days of the incident date." Ex. H to Defs.' Mot. for Summ. J., Doc. No. 45-9, at 2; Pl.'s 56(a)2 Stmnt., Doc. No. 48-2, at ¶ 32. The ACR continued: "This matter is now considered closed." *Id.*

Sease views certain important events differently. Sease believes that he followed the appropriate grievance procedure as outlined in A.D. 9.6. Sease claims—and the Defendants apparently do not dispute—that Sease never received a response to his informal resolution requests of May 21 and 23, even though A.D. 9.6(6)(A) requires that a "response to the inmate shall be made within 15 business days from receipt of the written request." *See* Add'l Mat. Facts, Doc. No. 48-2, at ¶ 5. Because Sease did not receive a timely response, he filed two Level 1 grievances on June 10[4] and June 14, which both were indisputably "within 30 calendar days of" the May 19 incident. *See* A.D. 9.6(6)(C). The Defendants acknowledge that they received Sease's Level 1 grievance dated June 14. (However, the Defendants claim they received it on June 17.) In that Level 1 grievance, Sease explained that on May 21 he "respectfully submitted a (CN 9601 Request Form)," but he had not yet received a response and so could not "attach the original request form with a staff member response." Ex. E to Defs.' Mot. for Summ. J., Doc. No. 45-6, at 4.[5] Instead, Sease attached a copy of the informal letter request that he also

---

[4] Although Sease mentions a Level 1 grievance submitted on June 10, neither party mentions it any further.
[5] Although Sease does not include any CN 9601 forms in his opposition papers, he claims that he submitted such forms and that they were never returned. *See* Ex. E to Defs.' Mot. for Summ. J., Doc. No. 45-6, at 4, 11; Ex. F to Defs.' Mot. for Summ. J., Doc. No. 45-7, at 3; Sease's Opp'n, Doc. No. 48, at 8. And in his June 14 Level 1 grievance Sease clearly "include[d] an explanation indicating why CN 9601 . . . is not attached." A.D. 9.6(6)(C); *see also* Ex. E to Defs.' Mot. for Summ. J., Doc. No. 45-6, at 4 ("On May 21, 2014, I respectfully submitted a (CN 9601 request form) . . . but Garner C.I.-G-Block-Captain did (not) respond to the request . . . , therefore I can (not) attach the original request form with a staff member response . . . .").

submitted on May 21. *See id.* at 4, 11–17. Sease admits that his June 14 Level 1 grievance was too long—it spanned four Level 1 grievance form pages because Sease calculated that the three additional form pages would offer the same amount of writing space as one blank 8.5-by-11-inch paper, which is the amount of space he is permitted by A.D. 9.6. *See* Add'l Mat. Facts, Doc. No. 48-2, at ¶ 7.

Sease claims that on June 18 he filed a Level 2 appeal because he had still not received responses to his informal resolution requests and Level 1 grievances. *Id.* at ¶ 9; Aff. of A. Sease in Supp. Pl.'s Opp. to Defs.' Mot. for Summ. J. ("Sease Aff."), Doc. No. 48-1, at ¶ 15; Ex. F to Defs.' Mot. for Summ. J., Doc. No. 45-7. According to Sease, on June 19, the ARC came to Sease's cell and hand delivered Sease's June 14 Level 1 grievance, which had been marked "returned without disposition" because it exceeded the page limit. *See* Add'l Mat. Facts, Doc. No. 48-2, at ¶ 11. The ARC advised Sease that Sease could fix the page limit error and resubmit his grievance. *See id.* at ¶ 12. Sease corrected his Level 1 grievance form the same day (June 19) and placed it in his cell door for collection. *See id.* at ¶ 13.

**III.    Discussion**

Actions brought by prison inmates are governed by the PLRA, which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life . . . ." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Prisoners must properly exhaust all administrative remedies, even when the relief sought cannot be granted through the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "Proper exhaustion" under the PLRA requires that prisoners

comply with all administrative deadlines and procedures. *See id.* at 90–91; *Vidro v. Erfe*, 2019 WL 4738896, at *6 (D. Conn. Sept. 26, 2019). The exhaustion requirement may be excused only when a remedy is not available in practice even if it is "officially on the books." *See Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016). Exhaustion is deemed satisfied when an inmate exhausts all "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)); *see also Shehan v. Erfe*, 2017 WL 53691, at *6 (D. Conn. Jan. 4, 2017) ("An inmate may be excused from the exhaustion requirement only if administrative remedies were not in fact available.").

The Supreme Court has established three sets of circumstances in which an administrative remedy might be unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

A.   Parties' Arguments

The Defendants argue that *any* Level 1 grievance filed later than 30 days after the "occurrence or discovery of the cause of the grievance" is untimely and is thus barred by A.D. 9.6. *See* Defs.' Mem. of Law, Doc. No. 47, at 6. According to that view, an inmate who re-files a Level 1 grievance that has been returned without disposition would need to re-file that corrected Level 1 grievance within A.D. 9.6's 30-day window. *Id.* at 12 ("[U]pon receipt of the

11

June 17, 2014 'return without disposition,' plaintiff failed to immediately remedy the deficiency cited, in order to resubmit it on the 17th, which was the last day allowable under AD 9.6.").

The Defendants do not highlight—in fact, in my view, they do not even cite—any factually analogous case that supports their position. Instead, the Defendants cite cases that stand for the general proposition that a Connecticut state inmate must submit a Level 1 grievance within 30 days from the date of the complained-of occurrence. *See, e.g.*, Defs.' Reply, Doc. No. 53, at 6 (citing *Osborn v. Williams*, 2017 WL 6731714, at *6 (D. Conn. Dec. 29, 2017); *Vidro*, 2019 WL 4738896, at *6). The Defendants argue that Sease could have submitted a corrected grievance within that 30-day window: Because Sease's Level 1 grievance was, according to them, returned without disposition (due to excess length) on June 17, Sease could have corrected that deficiency and re-submitted his Level 1 grievance the same day. Based on the Defendants' timeline, Sease would have had the rest of the day on June 17 to re-file his Level 1 grievance. Thus, in the Defendants' view, Sease was not "foreclosed from proper exhaustion of remedies through the inmate grievance process," and if he felt that he was foreclosed, he could have "sought permission from the Commissioner of the Department of Corrections to file a grievance late." Defs.' Mem. of Law, Doc. No. 47, at 11–12 (citing *Calderon v. Conn. Dep't of Corr.*, 2006 WL 3085716, at *8 (D. Conn. Sept. 1, 2006)); *see also* A.D. 9.6(6)(J).

On the other hand, Sease claims that A.D. 9.6's 30-day limit for filing a Level 1 grievance is not (and cannot logically be) applicable to re-filing a revised Level 1 grievance that had been previously returned without disposition. Sease argues that the Defendants' wrongful interpretation of A.D. 9.6—and the timing and substance of the Defendants' responses to Sease's grievances in this case[6]—rendered administrative remedies "unavailable" to him. *See* Sease's

---

[6] More specifically, Sease argues that genuine issues of material fact exist regarding whether (1) the Defendants intentionally returned his Level 1 grievance one day outside the 30-day window and (2) the Defendants

12

Opp'n, Doc. No. 48, at 11–19.  Sease argues in the alternative that, even if administrative remedies were "available," genuine issues of material fact exist regarding whether Sease in fact exhausted those remedies.  *See id.* at 19–23.[7]

B.     Discussion

As is evident from the above, the parties disagree about a lot in this case.[8]  Most importantly, the parties disagree regarding the date on which Sease submitted his relevant Level 1 grievance:  Was it June 14 or June 17?  The parties also disagree regarding the date on which that Level 1 grievance was returned to Sease without disposition (and, by extension, the date on which Sease could have re-filed that grievance):  Was it June 17 or June 19?  Those are obviously important disputes because A.D. 9.6's 30-day window expired on June 18.  For that reason, and others described below, genuine disputes of material fact exist regarding whether Sease properly exhausted his administrative remedies, and, if not, whether those remedies were

---

thwarted Sease's grievance attempts by returning without disposition Sease's corrected Level 1 grievance—rather than rejecting it, which would have made it appealable.  *See* Sease Opp'n, Doc. No. 48, at 15–18.  With respect to (2), Sease notes that even though his corrected Level 1 grievance was "returned without disposition," he filed a Level 2 appeal on July 7, 2014.  *See* Sease Aff., Doc. No. 48-1, at ¶ 24; Add'l Mat. Facts, Doc. No. 48-2, at ¶¶ 15–16.

[7] Sease also argues that the Defendants did not properly plead the affirmative defense of failure to exhaust.  *See* Sease's Opp'n, Doc. No. 48, at 23–24.  The Defendants asserted the failure to exhaust defense in their answer to Sease's second amended complaint.  *See* Answer, Doc. No. 22, at 4 (fourth affirmative defense).  However, the Defendants did not file an answer to Sease's third amended complaint.  Thus, Sease argues that the Defendants have waived the exhaustion defense.

I assume for purposes of this ruling that the Defendants have asserted the affirmative defense of non-exhaustion.  First, the authority on which Sease relies is inapposite.  In that non-prisoner case, a defendant filed two answers—one in response to the original complaint and another in response to the amended complaint.  *See Pitterman v. Gen. Motors LLC*, 2016 WL 2851541, at *1 (D. Conn. May 11, 2016).  The court "terminated as moot" certain affirmative defenses that the Defendant had asserted in the first answer but omitted in the second answer.  *Id.* at *2.  In this case, the Defendants filed only one answer, and in that answer they pleaded exhaustion as an affirmative defense.  Second, Sease filed the third amended complaint with the Defendants' written consent.  *See* Proposed Order, Doc. No. 38.  In fact, the parties jointly proposed a detailed scheduling order, which I approved.  *See* Order, Doc. No. 39.  That scheduling order was silent regarding a deadline for a responsive pleading to Sease's third amended complaint.  Third, the issue is moot because I deny the Defendants' motion for summary judgment based on exhaustion.

[8] Indeed, as I have already discussed, the parties even disagree about whether June 17 or June 18 was 30 days after May 19, 2014, even though the answer does not have an important bearing on this case.  *See supra* n.3.

"actually available" to Sease.[9]  More specifically, the second and third *Ross* categories—when a procedure is "so opaque that it becomes, practically speaking, incapable of use" and "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"—are potentially applicable in this case.  *Ross*, 136 S. Ct. at 1859–60; *see also Osborn*, 2017 WL 6731714, at *5 (citing *Williams v. Priatno*, 829 F.3d 118, 122–23 (2d Cir. 2016)).  Thus, I deny the Defendants' motion for summary judgment.

The Defendants' proposed reading of A.D. 9.6—requiring even a corrected Level 1 grievance to be submitted in the 30-day window—is internally inconsistent and has no apparent precedential support.  In this case, the Defendants returned Sease's Level 1 grievance without disposition because it was too long.  *See* Ex. E to Defs.' Mot. for Summ. J., Doc. No. 45-6, at 2.  By definition, a grievance returned without disposition *may be re-filed*.  *See* A.D. 9.6(6)(E) ("Returned without disposition signifies that the grievance has not been properly filed and may be re-filed after the inmate has corrected the error.").  In addition, the DOC need only respond to a Level 1 grievance "within 30 business days of receipt by the Level 1 Reviewer."  A.D. 9.6(6)(I).  If the Defendants' reading of A.D. 9.6 were accepted, the above two provisions (combined) could ensure that no inmate grievance "returned without disposition" could *ever* be re-filed (by the DOC's waiting 30 days to address the Level 1 grievance), even though such grievances are explicitly allowed to be re-filed.  Indeed, that is precisely what Sease alleges happened in this case: Sease claims that his Level 1 grievance was returned to him on June 19, which was one day outside A.D. 9.6's 30-day window.  *See* Sease Aff., Doc. No. 48-1, at ¶ 19

---

[9] I agree with Sease that those two inquiries are, in this case, "intimately related" and essentially the same.  *See* Sease Opp'n, Doc. No. 48, at 19.

("Though the non-decision form was dated June 17, 2014, I did not receive the form until June 19, 2014.").

The Defendants' position is also illogical. On the Defendants' theory, if an inmate's grievance is returned to him at 9 p.m. (or, even, 11:59 p.m.) on the last day of the 30-day window, the inmate would have virtually (or literally) no opportunity to re-file a corrected Level 1 grievance. In this case, the Defendants claim that they returned Sease's faulty Level 1 grievance on June 17 and so he had an "opportunity to correct his submission." Defs.' Mem. of Law, Doc. No. 47, at 6. Notably, the Defendants do not reveal what time of day the Level 1 grievance was returned to Sease.

I am unaware of any court that has given this precise issue extensive discussion. But at least one court has implicitly held that a Level 1 grievance re-filed outside the applicable 30-day window after having been returned without disposition would have been timely under A.D. 9.6—or that if the re-filed grievance had been rejected as untimely, administrative remedies would have been "unavailable" as contemplated by *Ross*. In *Baltas v. Erfe*, a grievance coordinator returned a grievance the plaintiff had filed and instructed the plaintiff to re-file it. 2020 WL 1915017, at *33 (D. Conn. Apr. 20, 2020). However, when the plaintiff re-filed the grievance, it was rejected it as untimely. *See id.* The court held that—although the plaintiff had not been deprived of a constitutional right—he was still able to seek redress in federal court because the grievance procedure had been "unavailable" to him in this instance. *See id.* ("The fact that the plaintiff may not have been able to completely or properly exhaust all available grievance procedures did not preclude him from seeking redress for his claims . . . in this court."). In my view, the *Baltas* Court determined that a correctional officer's returning a grievance to an inmate with an instruction to re-file it and then rejecting the re-filed grievance as untimely would

15

constitute "thwart[ing] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* (quoting *Ross*, 136 S. Ct. at 1859; *Baltas v. Rivera*, 2019 WL 3944435, at *10–11 (D. Conn. Aug. 21, 2019)).[10]

Along the same lines, if the Defendants' theory prevailed, it would, in my view, make the DOC's administrative scheme "so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859. Indeed, the Second Circuit has held that an administrative scheme can be so opaque that it is unavailable when the relevant regulations do not provide a clear answer regarding how to pursue a particular administrative remedy. *See Priatno*, 829 F.3d at 124–26 (holding that administrative scheme was "prohibitively opaque" when the relevant regulations "plainly do not prescribe a mechanism for appealing a grievance that was never filed" and also "do not provide guidance on how a transferred inmate can appeal his grievance with the original facility without having received a response"). Similarly, the administrative scheme in this case—on the Defendants' theory—would also be prohibitively opaque because A.D. 9.6 would provide *contradictory* guidance. As already described, A.D. 9.6 explicitly allows for a grievance that is returned without disposition to be "re-filed after the inmate has

---

[10] Sease relies heavily on *Torrez v. Mulligan*, 2018 WL 4054882 (D. Conn. Aug. 24, 2018), to establish the same point. *See* Sease's Opp'n, Doc. No. 48, at 13 ("*Torrez v. Mulligan* is instructive and perhaps even dispositive."). But *Torrez* is inapposite in an important way. In *Torrez*, I denied the defendant DOC officials' motion for summary judgment on exhaustion grounds. *See Torrez*, 2018 WL 4054882, at *5. Torrez had submitted a Level 1 grievance within A.D. 9.6's 30-day window, and it was returned without disposition. *See id.* at *4. Torrez claimed that later—over two months after the relevant occurrence—he "corrected and resubmitted" his grievance. *Id.* The DOC disputed that Torrez ever resubmitted his grievance and argued that, even if he did, the corrected grievance "did not comply with the deadlines set forth by" A.D. 9.6. *Id.* at *5. I held that there were genuine issues of material fact with respect to "whether Torrez timely filed his corrective grievance" because "[t]he fact that the paperwork was, in [the Defendants'] view, filed late does not necessarily require a finding that DOC officials would have rejected Torrez's claims as untimely." *Id.* That was because there was no "response from DOC officials on the corrective grievance and/or appeals forms" in the record. *Id.* In this case, though, DOC officials *did* reject Sease's re-filed grievance as untimely filed. *See* Ex. G to Defs.' Mot. for Summ. J., Doc. No. 54-1. Thus, the basis for my ruling in *Torrez* does not exist here.

corrected the error."  A.D. 9.6(6)(E); *see also* Ex. E to Defs.' Mot. for Summ. J., Doc. No. 45-6, at 2 (returning Sease's June 14 Level 1 grievance without disposition and stating, at the bottom, "You may resubmit your grievance when it is in compliance with Administrative Directive 9.6"). But, on the Defendants' theory, an inmate could re-submit a grievance returned without disposition only within 30 days of the relevant incident.  If the absence of guidance in a grievance procedure can lead to an administrative scheme's being "prohibitively opaque," *Priatno*, 829 F.3d at 124–27, then surely contradictory instructions in a grievance procedure can also lead to an administrative scheme's being prohibitively opaque.

The Defendants bear the burden of proving exhaustion.  They have not carried that burden here.  Construing the evidence in the light most favorable to Sease, the nonmoving party, I conclude that genuine issues of material fact exist regarding whether Sease exhausted his administrative remedies and whether, even if he did not, those administrative remedies were available to him.

**IV.    Conclusion**

For the foregoing reasons, I **deny** the Defendants' motion for summary judgment, doc. no. 45.


So ordered.

Dated at Bridgeport, Connecticut, this 25th day of January 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge